UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| TANIA J. CASE ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| LAMPREY HEALTH CARE ) | |
| ) | |
| Defendant ) | |

**COMPLAINT**

**I.   Parties:**

1. The plaintiff, Tania J. Case, resides at 10 Lamprey Village, Epping, NH, 03042.

2. Lamprey Health Care ("hereinafter Lamprey") is a corporation that receives federal funding and is considered a Federal agency, with a principal place of business at 207 South Main Street, Newmarket, NH, 03857.

**II.   Jurisdiction & Venue:**

3. This Court has jurisdiction over the subject matter of this proceeding pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and the Administrative Procedures Act ("APA"), 5 U.S.C. § 552(a)(4)(B), and because the plaintiff has exhausted her administrative remedies. On or about January 25, 2012, the Plaintiff sent to Lamprey via certified mail a Claim for Damage, Injury or Death for the

1

Claimant, providing the required notice under the Federal Tort Claims Act. Lamprey accepted service via certified mail on January 27, 2012.

4. Lamprey was provided more then six months to investigate the Claim and respond administratively but has not responded to the Claim for Damages, Injury or Death.

5. Because the six month waiting period has expired with no response from Lamprey, the Plaintiff may bring this lawsuit in Federal Court under the Federal Tort Claims Act.

6. Venue is proper in this Court because the event giving rise to the action occurred within the District of New Hampshire.

### III. Factual Background:

7. This case arises from Lamprey Health Care's termination of long time employee, Tania Case, because she refused to affirm to Lamprey that she would not lie about and/or cover up any damaging information concerning Lamprey's medical treatment of Ms. Case's brother that allegedly caused his death and resulted in a subsequent wrongful death lawsuit against Lamprey.

8. Lamprey gave Ms. Case the choice of choosing "which side" she would be on, and when Ms. Case said she was not choosing any side, she just wanted to work; she was fired under the pre-text of a lay off. The termination was in bad faith, and against New Hampshire public policy. Ms. Case was terminated for doing something that public policy would support, namely, refusing to commit to lying under oath or

otherwise covering up information about her brother's medical treatment while at Lamprey in the aforementioned wrongful death lawsuit against Lamprey.

9. Tania Case worked as a Team Coordinator for Lamprey Health Care in Raymond for 8 years. As a Team Coordinator, Ms. Case would manage access to health care for 300+ patients a day. Her job required her to handle and process medical data and medical records of Lamprey patients.

10. In 2009, Ms. Case's blood brother, Alfred Case, Jr., had a physical at Lamprey Health Care in Raymond, but 2 weeks later he died of a heart attack, leaving his wife of 21 years and 3 children behind. His wife, Tania's sister-in-law, had a right to bring a wrongful death suit against Lamprey for being liable in failing to properly diagnose her husband. Mr. Case's estate in fact filed such a wrongful death suit against Lamprey on or about January 13, 2010.

11. In March of 2010, Tania Case was brought into the office of her Administrator, Nikki Watson and was told that Lamprey was likely going to be sued for Alfred Case's wrongful death. Nikki had referred to Alfred as Tania's "brother-in-law" and was taken aback when Tania pointed out that Al was actually her brother, a sibling, not a brother-in-law.

12. Nothing else happened with regard to interaction with Lamprey until January of 2011, when Tania Case was again called into Nikki Watson's office and asked a number of questions about whether she had taken any of her brother's medical records and whether she had printed out any of his record. Ms. Case answered in the negative because she had not done so. The clear implication was that Ms. Case had

access to medical records that might be harmful to Lamprey's defense of the malpractice case brought by the Estate of Ms. Case's deceased brother, and that Tania would improperly take those records and give them to the Estate to help its case, and thereby hurt her employer.

13. In early March of 2011, Ms. Case was again called into Nikki Watson's office and was told that there was definitely a wrongful death suit going forward and therefore, Nikki needed to know "what side are you on?" Ms. Case told her she loved her work at Lamprey Health Care and she also loved her brother and preferred to stay out of it as it did not directly involve her. Ms. Watson told her to think about her choice and which side she was going to pick because she would be asked again for a more direct answer.

14. In early April of 2011, Ms. Case was called into Nikki Watson's office and asked if she had any tape recordings of conversations with Al or any of his records saved anywhere. She was also asked if she had a Blackberry with any of his records on it, and once again, Ms. Case answered that she had none, had done nothing, and had nothing.

15. In May of 2011, Ms. Case was again brought into Nikki Watson's office and asked which side she had chosen, meaning, was she going to help Lamprey win its suit against her brother's estate by turning a blind eye to Lamprey's negligence, or was she going to support her employer and not review or discuss any records she might have reviewed in any deposition in the Estate's case.

16.     Ms. Case responded, "I don't want to choose, I love both my job and my brother and I'm not going to choose a side." Nikki pushed her for an answer saying, if you had to choose today is it your career or your brother?  Ms. Case answered, "well, if I have to choose a side today it would be for my blood brother."

17.     On June 15, 2011, Ms. Case was getting ready to take a 2 week vacation to celebrate her youngest son's high school graduation.  She was called into her Supervisor Marie Bannon's office and was told that Nikki Watson and Lisa Trial, Director of Human Resources, were waiting for Ms. Case upstairs.  Tania Case broke into tears and said to Marie, "I'm getting fired, aren't I?"  Ms. Bannon said "yes, you are."

18.     When Ms. Case went upstairs, Nikki Watson gave her a letter stating that her position was being terminated due to a budget cut.  In fact, there were 3 other persons laid off on that date of June 15, 2011, but the other 3 had been under a grant funded by the State that had been eliminated whereas Ms. Case had been a regular full funded, full time Lamprey Health Care employee.

19.     Ms. Case has been out of work since her termination in June of 2011, and has suffered emotional upset, humiliation, loss of income and the loss of a satisfying career in the health services field.

20.     Tania Case's brother's family has a right to seek compensation for the death of Alfred without Tania being deprived of her job.  Tania Case did not sue Lamprey Health Care for malpractice and should not be punished for what Alfred's widow chose to do.  She should also not be punished for refusing to "side" with the hospital in order to possibly obstruct or shade the search for truth in a civil case.  Public

policy encourages potential witnesses to be unbiased and neutral, as opposed to "choosing sides." In fact about 100 pages of her brother's medical records that had not been produced in discovery were miraculously found later on despite earlier representations of full disclosure by Lamprey in Alfred's case.

21. Plaintiff had previously testified in the malpractice case of <u>Priolo v. United States of America</u>, Civil Action No: 07-CV-413 and she felt pressured by the defense attorney in that case to "forget" certain facts harmful to Lamprey. She properly chose to tell the truth, but that experience led her to believe that the phrase "which team are you on?" was really code for whether she would be willing to shade the truth in her brother's case or "forget" information in records she may have routinely reviewed during the course of her employment.

22. Public policy in New Hampshire provides a common law tort recovery system that has its roots in England. RSA 491:7 recognizes that the opportunity to seek redress for injuries for wrongful death or other harm to individuals is a right that all citizens may exercise in the courts.

23. The New Hampshire Constitution in Part I, Article 14 provides:

> **[Art.] 14. [Legal remedies to be Free, Complete and Prompt.]** Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial, promptly, and without delay; comfortable to the laws.

24. Further, the "right to recovery for one's injuries in an 'important substantive right' under the New Hampshire Constitution." <u>Carson v. Maurer</u>, 120 N.H. 925, 931-32 (1980).

25. "Our Constitution provides that all citizens have a right to the redress of their actionable injuries…. these principles require that the substantive rights of plaintiffs to maintain actions in tort be accorded solicitous protection." <u>Gould v. Concord Hospital</u>, 126 N.H. 405, 409 (1985).

26. Tania Case should not be terminated because her sister-in-law exercised her right for redress in the courts.

## COUNT I
## WRONGFUL TERMINATION

27. The allegations in the preceding paragraphs are incorporated herein by reference.

28. Lamprey wrongfully terminated Tania Case because she performed an act that public policy would support, by declining to indicate that she would potentially hide or lie about the existence of certain medical records, or possibly lie about information she may have reviewed in medical records, to support her employer's "team" in the defense of a malpractice case she was uninvolved in but had been brought by her own brother's Estate. Public policy encourages potential witnesses in civil cases to be as neutral, unbiased, and uninfluenced by outside pressures as possible rather than to be considered in lockstep with an employer's version of facts.

29. Lamprey's termination of Tania Case's employment was motivated by bad faith, retaliation and malice as she should never had been put in the position of a loyalty oath to her employer over her family, or being forced to choose whether she would support a cover up or potential cover up/minimization of malpractice or support of her brother's lawsuit against her employer. See Cloutier v. A & P, 121 N.H. 915 (1981).

30. Lamprey wrongfully terminated Tania Case's employment, as a result of which plaintiff has suffered, and continues to suffer, substantial injury and damage, including, but not limited to, lost wages and benefits, lost earning capacity, future lost wages and benefits, emotional distress, and enhanced compensatory damages for the wanton, oppressive and malicious actions of Lamprey.

WHEREFORE, the plaintiff Tania J. Case, respectfully prays this Honorable Court:

    A.    Schedule this matter for bench trial;

    B.    Find that the defendant violated Ms. Case's rights under the Federal Tort Claim Act and New Hampshire common law;

    C.    Award Ms. Case damages for lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, loss of enjoyment of life and other consequential damages;

    D.    Award Ms. Case her reasonable attorney's fees;

    E.    Award Ms. Case her interest and costs; and

    F.    Grant such other and further relief as is just and equitable.

Respectfully submitted,

        Respectfully submitted,
        TANIA J. CASE
        By her attorneys,
        DOUGLAS, LEONARD & GARVEY, P.C.

Dated: April 12, 2013        /s/ Charles G. Douglas, III, Esquire
        Charles G. Douglas, Esq. (Bar No. 669)
        /s/ Stephen A. Duggan, Esquire
        Stephen A. Duggan, Esq. (Bar No. 11280)
        6 Loudon Road, Suite 502
        Concord, NH  03301-5321
        (603) 224-1988
        mail@nhlawoffice.com